**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARISH ESPINOSA, individually and on behalf of others similarly situated,<br><br>                         Plaintiff,<br><br>v.<br><br>CALIFORNIA COLLEGE OF SAN DIEGO, INC., and DOES 1-100,<br><br>                      Defendants. | Case No.:  17cv744-MMA (BLM)<br><br>**ORDER: (1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND**<br><br>[Doc. No. 25]<br><br>**(2) GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS**<br><br>[Doc. No. 24] |

Plaintiff Charish Espinosa, individually and on behalf of others similarly situated, moves for final approval of this class action settlement and for attorneys' fees, costs and expenses, and class representative enhancement awards.  Doc. Nos. 24, 25.  Both motions are unopposed.  Doc. No. 28; *see also* Docket.  The Court held a final approval hearing on these matters pursuant to Federal Rule of Civil Procedure 23(e)(2).  Doc. No. 35.  For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Final Approval of Class Action Settlement [Doc. No. 25], and **GRANTS IN PART** Plaintiff's Motion for

Attorneys' Fees, Costs and Expenses, and Class Representative Incentive Awards [Doc. No. 24].

## BACKGROUND[1]

Plaintiff Charish Espinosa ("Plaintiff") originally filed this action in San Diego County Superior Court on February 21, 2017.  Doc. No. 1 at 9.[2]  Defendant California College of San Diego, Inc. ("Defendant" or "CCSD") removed the action to this Court on April 12, 2017.  Doc. No. 1.  On April 19, 2017, Defendant filed a motion to dismiss the Complaint.  Doc. No. 6.  On June 2, 2017, Plaintiff filed the operative First Amended Complaint ("FAC") [Doc. No. 7 ("FAC")], and Defendant withdrew its motion to dismiss [Doc. No. 8].

Defendant, a private college founded in 1997, operates schools of business, healthcare technology, and graphic arts, which collectively offer associate, bachelors, and masters degrees.  FAC, ¶¶ 19-20.  Defendant employed Plaintiff as a non-exempt, hourly-paid employee in its financial aid department from approximately September 2011 until February 2014 at Defendant's college in San Diego, California.  FAC, ¶ 22.  Plaintiff's job duties included "conducting prescheduled interviews of student financial aid applicants and completing associated paperwork concerning those students['] aid applications."  FAC, ¶ 23.  "Plaintiff was often unable to complete her work duties within her scheduled work day and take full and duty free meal and rest breaks."  FAC, ¶ 24.  As a result, "Plaintiff was often required to forgo her off-duty rest breaks, skip or take a late meal period, and/or perform work duties while off-the-clock during her scheduled meal period" to complete her work duties.  *Id.*

---

[1] Unless otherwise specified herein, the Court adopts all defined terms and conditions of the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"), which is attached as Exhibit 1 to the supplemental declaration of Matthew Bainer.  Doc. No. 31, Exhibit 1.

[2] All pincite page references refer to the automatically generated ECF page number, not the page number in the original document.

17cv744-MMA (BLM)

Upon information and belief, Plaintiff alleges that Defendant's supervisors and managers "were or should have been aware" that Plaintiff's duties resulted in "her being denied all statutorily required rest and meal periods and required her to perform work duties while off-the-clock . . . ." FAC, ¶ 25. "Despite being denied all statutorily required rest and meal periods and requir[ing] her to perform work duties while off-the-clock," Plaintiff was never paid one additional hour of pay at her regular hourly rate for any missed or late meal or rest period and was never paid any wages for the time she spent working while off-the-clock. FAC, ¶ 26.

Plaintiff alleges that Defendant continues to employ non-exempt, hourly-paid employees at multiple campuses throughout California, "that employees were not paid for all hours worked because all hours worked were not recorded," and that "Defendants knew or should have known that Plaintiff and class members were entitled to certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation." FAC, ¶¶ 27-30. Further, Plaintiff alleges Defendant knew or should have known that Plaintiff and class members: (1) "were entitled to be paid at a regular rate of pay, and corresponding overtime rate of pay, that included as eligible income all income derived from non-discretionary bonuses[;]" (2) "were not receiving at least minimum wages for work done off-the-clock[;]" (3) "did not receive all meal periods or payment of one (1) additional hour of [regular] pay . . . when they did not receive a timely, uninterrupted meal period[;]" (4) "did not receive all rest periods or payment of one (1) additional hour of [regular] pay . . . when a rest period was missed[;]" (5) "did not receive payment of all wages, including, but not limited to meal and rest period premium wages, within permissible time periods[;]" and (6) "were entitled to timely payment of wages upon termination . . . ." FAC, ¶¶ 31-36. Finally, Plaintiff alleges Defendant knew or should have known it had a duty to compensate Plaintiff and other class members and that Defendant had the financial ability to pay such compensation, "but willfully, knowingly, and intentionally failed to do so, and falsely

represented to Plaintiff and other class members that they were properly denied wages" to increase Defendant's profits.  FAC, ¶ 37.

Accordingly, Plaintiff filed this class action complaint alleging claims for: (1) unpaid overtime in violation of California Labor Code §§ 510 and 1198; (2) unpaid minimum wages in violation of California Labor Code §§ 1194, 1197, and 1197.1; (3) unpaid meal period premiums in violation of California Labor Code §§ 226.7 and 512(a); (4) unpaid rest period premiums in violation of California Labor Code § 226.7; (5) failure to timely pay wages upon termination in violation of California Labor Code §§ 201 and 202; and (6) unfair competition in violation of California Business and Professions Code §§ 17200, *et seq*.  *See* FAC, ¶¶ 38-80.  Plaintiff brings this case on behalf of "all persons who, from February 21, 2013, up to and including [December 14, 2017], worked for Defendant in the state of California as a non-exempt, hourly-paid employee."  *See* Doc. No. 25 at 7.

On November 17, 2017, Plaintiff and Defendant filed a joint motion for preliminary approval of the class action settlement.  Doc. No. 22.  On December 14, 2017, the Court entered an Order of Preliminary Approval of Class Action Settlement.  Doc. No. 23.  On January 26, 2018, Plaintiff filed the instant Motion for Attorneys' Fees, Costs and Expenses, and Class Representative Incentive Awards, and on February 5, 2018, Plaintiff filed the instant Motion for Final Approval of Class Action Settlement.  Doc. Nos. 24, 25.  On February 16, 2018, the Court ordered Plaintiff to file supplemental documentation clarifying settlement administration and litigation costs.  Doc. No. 27.  On February 20, 2018, Plaintiff filed a supplemental declaration in response to the Court's order.  Doc. No. 27.  Defendant filed a notice of non-opposition to Plaintiff's Motion for Final Approval of Class Settlement on February 23, 2018.  Doc. No. 28.  Additionally, Defendant does not oppose Plaintiff's requested attorneys' fees, litigation costs, settlement administration costs, or the Class Representative incentive award.  *See* Docket.

On February 26, 2018, the Court identified an error in the underlying settlement agreement and ordered the parties to file an updated version of the Joint Stipulation of

Class Action Settlement and Release of Claims ("Settlement Agreement"). Doc. No. 29. On February 28, 2018, the parties filed the updated and operative Settlement Agreement. Doc. No. 31, Exhibit 1 ("Settlement Agreement"). On February 27, 2018, the Settlement Administrator filed a supplemental declaration indicating that the Settlement Administrator had received 28 additional Claim Forms since the filing of her original declaration on February 5, 2018. Doc. No. 30, Supplemental Declaration of Lindsay Kline Regarding Notice and Settlement Administration ("Kline Supp. Decl."). Concerned that additional Claim Forms might be received after the original hearing date of March 5, 2018, the Court reset the hearing for April 9, 2018. Doc. No. 32. Accordingly, the Court ordered the Settlement Administrator to file an additional declaration on or before April 2, 2018 declaring whether any additional Claim Forms had been received and whether the Settlement Administrator anticipated receiving additional Claim Forms. *Id.* The Court also permitted Plaintiff's Counsel to file a supplemental declaration regarding any change in litigation costs. *Id.*

On April 3, 2018, the Settlement Administrator filed a supplemental declaration. Doc. No. 33, Supplemental Declaration of Jarrod Salinas Regarding Notice and Settlement Administration ("Salinas Decl."). Plaintiff's Counsel did not file a supplemental declaration with respect to litigation costs. *See* Docket.

**OVERVIEW OF THE SETTLEMENT**

**1.** *Settlement Class*

The Settlement Agreement proposes a class comprised of "all persons who, from February 21, 2013, up to and including the date that the Court grants preliminary approval of this Settlement, worked for Defendants in the state of California as a non-exempt, hourly-paid employee." Settlement Agreement at I. The Court granted preliminary approval of the settlement on December 14, 2017.[3] Doc. No. 23.

---

[3] As such, the Class Period is from February 21, 2013 to December 14, 2017.

**2.** *Settlement Terms*

Pursuant to the Settlement Agreement, Plaintiff and Class Members who do not opt-out will release those claims, within the applicable Class Period arising from or related to any of the allegations in the Action. Settlement Agreement at V. The proposed settlement provides each Class Member who submits a Claim Form to the Settlement Administrator with a pro rata share of the Net Settlement Amount based on "the number of weeks that each Class Member worked as an hourly employee during the Class Period, less all employee and employer portions of any payroll tax requirements and any other applicable payroll deductions required by law." Doc. No. 25 at 7-8. Specifically, Defendant will pay a cash settlement of $135,678.67 to 219 Class Members. Kline Supp. Decl., ¶¶ 3, 5.

The Net Settlement Amount means the Gross Settlement Amount ($300,000.00) payable by Defendant pursuant to the Settlement, less the Class Representative payment ($2,500), Plaintiff's Counsel's attorneys' fees and costs ($90,000.00 in attorneys' fees and $6,464.56[4] in costs), and administration costs ($7,783.00), which totals $193,252.44. Settlement Agreement at I; *see also* Doc. No. 25-2, Declaration of Lindsay Kline Regarding Notice of Settlement Administration ("Kline Decl."), ¶ 11; Kline Supp. Decl., ¶4; Doc. No. 24 at 24; Doc. No. 25 at 8; Doc. No. 27 at 2-4. The Participating Class Members' individual settlement amount is calculated based on "the number of weeks that each Class Member worked as an hourly employee during the Class Period, less all employee and employer portions of any payroll tax requirements and any other applicable payroll deductions required by law." Doc. No. 25 at 7-8. In order to receive payment, Participating Class Members must submit a valid Claim Form, which verifies their contact information and work date information. Settlement Agreement at III; *see also* Doc. No. 31 at 40 (attaching a blank Claim Form as an exhibit). Thus, only $135,678.67

---

[4] As discussed below, the Court reduces Plaintiff's Counsel's requested litigation costs to $6,464.56.

of the Net Settlement Fund—or approximately 70% of the Net Settlement Fund—will be disbursed. Kline Decl., ¶ 12; *see* Doc. No. 27 at 2-4. Where, as here, at least fifty percent of the Net Settlement Amount is distributed to the Class, the remaining unclaimed sums are to be returned to Defendant. Settlement Agreement at III.

The Notice Packet, which was preliminarily approved by the Court, advised Class members of their rights to submit a claim, request exclusion from the Settlement, object to the Settlement, do nothing, and the implications of each action. Kline Decl., ¶ 5. The Notice Packet also advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. *Id.*

On December 21, 2017, counsel for Defendant provided Simpluris, the "Settlement Administrator," with a mailing list ("Class List") containing the name, most recent mailing address and telephone number, Social Security number, and pertinent employment information for each Class Member during the Class Period. Kline Decl., ¶ 6. The Class List contained data for 403 Class Members. *Id.* The mailing addresses contained in the Class List were then processed and updated utilizing the National Change of Address Database ("NCOA"). Kline Decl., ¶ 7. The Notice Packets were mailed to all 403 Class Members on January 3, 2018, utilizing the updated mailing addresses. Kline Decl., ¶¶ 7-8. For notices that were returned without a forwarding address, the Settlement Administrator performed advanced address searches, or "skip traces." Kline Decl., ¶ 9. Through the advanced address searches, the Settlement Administrator was able to locate 13 updated addresses and promptly mailed Notice Packets to those addresses. *Id.* The Class Notice advised Class members that the deadline to respond was February 2, 2018. Salinas Decl., ¶ 3. Only one Notice Packet was returned as undeliverable. *Id.* As of February 27, 2018, the Settlement Administrator had not received any requests for exclusion from the class, any objections to the settlement, or any disputes of work weeks from class members. Kline Supp. Decl., ¶¶ 6-8. Additionally, the Settlement Administrator did not receive additional Claim

Forms between February 27, 2018 and April 3, 2018 and does not anticipate receiving additional Claim Forms. Salinas Decl., ¶ 4.

The Court finds that this notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of the Class Members. The Court also finds and determines that the notice provided in this case was the best practicable, which sufficiently satisfied the requirements of law and due process.

The Settlement Administrator declares the settlement administration costs are $7,783. Kline Supp. Decl., ¶ 4. The Settlement Administrator 's duties include, but are not limited to: (1) establishing and maintaining a related settlement fund account; (2) establishing and maintaining a calendar of administrative deadlines and responsibilities; (3) processing and mailing payments to the Plaintiffs, Plaintiff's Counsel and Claimants; (4) printing and mailing the Notice of Proposed Class Action Settlement and the Claim Form to Class Members; (5) receiving and validating Claim Forms submitted by Claim Members; (6) receiving and validating Requests for Exclusion, Objections or Disputes of Work Weeks submitted by Class Members; (7) calculating Employer Payroll Taxes and providing appropriate forms and calculations to Defendant; and (8) mailing settlement checks. Accordingly, the Court **APPROVES** the Settlement Administration costs in the amount of $7,783.00.

## MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

### 1. *Legal Standard*

Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is

fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

A court considers several factors in determining whether a proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). Such factors may include: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery, and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court need only consider some of these factors—namely, those designed to protect absentees. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (overruled in part on other grounds).

Judicial policy favors settlement in class actions and other forms of complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

**2.** *Analysis*

> **a.** **Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In other words:

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "it has been held proper to take the bird in hand instead of a prospective flock in the bush."

9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

Plaintiff contends that although she "believes the class claims are strong, Defendant disputes liability and the appropriateness of class certification (for all purposes other than settlement) and ha[s] vigorously defended the action." Doc. No. 25 at 15-16. If litigation were to continue, Plaintiff notes she might encounter "significant legal and factual hurdles" that could prevent the Class from obtaining any recovery. *Id.* at 16. Plaintiff cites to several wage and hours actions amenable to class resolution, but also notes that several courts have found meal period, rest period, and off-the-clock violations too individualized for class adjudication even where an employer's policies were found to be facially unlawful. *Id.* at 16-17. Thus, Plaintiff explains that "the prospect of certifying a wage and hour action is always uncertain, and the risk of being denied certification effectively forecloses continued litigation, as neither the individual nor his or her attorney will have any incentive to proceed with an individual case when such small claims are at stake." *Id.* at 17. Specifically, Plaintiff states that if the putative class is not certified, "the value of Plaintiff's case would have been reduced to a fraction of the value of this Settlement; indeed, Defendant would have likely offered no money to settle the class-wide claims if certification had been denied." *Id.* Based on the foregoing, this factor weighs in favor of approving the settlement.

**b.** **The Risk of Maintaining Class Action Status Through Trial**

Pursuant to Rule 23, the Court may revisit a prior order granting certification of a class at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (finding that the complexity of the case weighed in favor of approving the settlement).

Plaintiff does not specifically address this factor in her motion for final approval. *See* Doc. No. 25. However, Plaintiff indicated that if the Court does not finally approve the settlement, she would need to move for class certification, which Defendant would vigorously oppose as it disputes the appropriateness of class certification for purposes other than settlement. *Id.* at 15-16. Moreover, Plaintiff cited to several courts that have certified similar wage and hour actions and several other courts that have found wage and hour actions inappropriate for class adjudication. *Id.* at 16. Accordingly, there is some risk that the Class would either not be certified or that something may arise before trial that would require the Court to decertify a class. As such, this factor favors approval of the settlement.

### c. The Stage of the Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528. In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).

Based on the parties' representations, it appears that the Settlement Agreement resulted from arms-length negotiations, and was not the result of collusion. The parties have been litigating the action for approximately one year and actively engaged in the discovery process. *See* Doc. Nos. 1; 25 at 9. For example, "Defendant produced policy documents, handbooks, wage and hour records, and the results of a sampling of class member time records" which permitted Plaintiff's Counsel to "determine the average hourly rate of pay for Class Members, the total approximate number of Class Members who worked during the Class Period, and the total number of former employees during the Class Period." Doc. No. 25 at 9. Moreover, "Plaintiff's Counsel performed an extensive investigation into the claims at issue, including[:]" (1) determining the suitability of the putative class representatives through interviews, background

investigations, and analyses of employment files and related records; (2) researching wage-and-hour class actions involving similar claims, theories of liability, and settlements; (3) acquiring information regarding putative Class Members' potential claims, identifying additional witnesses, and obtaining documents in support of class certification; (4) obtaining and analyzing Defendant's wage-and-hour policies and procedures; (5) preparing valuation analyses; (6) participating in a Court-ordered Early Neutral Evaluation conference and other calls with the Court; (7) preparing for and participating in a full-day private mediation session; (8) negotiating the terms of this Settlement; (9) finalizing the Settlement Agreement; and (10) drafting preliminary approval papers. *Id.* at 9-10. Based on the discovery and investigation conducted by the parties, Plaintiff and Defendant were able to assess the strengths and weaknesses of the claims against Defendant and the benefits to the proposed class. *Id.*

Even further, the Settlement was achieved only after attending a full-day mediation with Steven Pearl, "who specializes in mediating employment disputes, including wage and hour class actions." *Id.* As a result of the full-day mediation, the parties were able to reach an agreement on the principal terms and spent the next several weeks finalizing the agreement. *Id.* Accordingly, this factor favors approval.

### d. <u>The Settlement Amount</u>

"In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at 527 (internal citation and quotation marks omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citations omitted).

Pursuant to the Settlement Agreement, Defendant must pay a cash settlement of $135,678.67 to 219 members of the Settlement Class Members. Kline Supp. Decl., ¶¶ 3, 5. Each Participating Member will be awarded compensation based on "the number of

weeks that each Class Member worked as an hourly employee during the Class Period, less all employee and employer portions of any payroll tax requirements and any other applicable payroll deductions required by law." Doc. No. 25 at 7-8. This amount is proportional to the number of weeks the Class Member worked as an hourly employee during the Class Period. *Id.* at 11. All in all, this means that the average recovery under the settlement is approximately $619.54 and the highest recovery is approximately $1,246.62. Kline Supp. Decl., ¶ 5. Plaintiff indicates that the settlement amount is fair and equitable because without class settlement, individual damages are relatively small and there would be little or no recovery for employees. Doc. No. 25 at 17. Further, Plaintiff asserts that the average recovery of $619.54 "compares favorably to other wage and hour class action settlements for similar claims on behalf of non-exempt employees." *Id.* at 19. Thus, this factor favors approval.

### e. <u>Fair and Adequate Representation During Settlement Negotiations</u>

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV*, 221 F.R.D. at 528 (internal quotation marks and citation omitted).

Plaintiff's Counsel asserts that it is "seasoned in class action litigation and regularly litigate[s] wage and hour claims through certification on the merits, and ha[s] considerable experience settling wage and hour class actions." Doc. No. 25 at 18. Additionally, Defendant is represented by Duane Morris, LLP, which is a "nationally respected defense firm." *Id.* Moreover, Plaintiff's Counsel believes the terms of the settlement are fair, reasonable, adequate, and in the best interests of Class Members. *Id.* Accordingly, this factor favors approval.

### f. <u>Class Reaction to the Proposed Settlement</u>

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. *Mandujano v. Basic Vegetable Prods.*

*Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class did not file an opposition).

After receiving notice of the proposed settlement, not a single Class Member requested exclusion, objected to the Settlement, or disputed their work weeks. Kline Decl., ¶ 13-15; Doc. No. 25 at 19. As a result, this factor favors settlement.

**3.** <u>*Conclusion*</u>

Because the factors outlined above favor approving the Settlement, the Court **GRANTS** the motion and finds that the settlement is "fair, reasonable, and adequate" under Rule 23(e).

<u>MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT AWARD</u>

Plaintiff seeks attorneys' fees, litigation costs, and Class Representative incentive awards totaling $99,723.16. Doc. No. 24 at 2. Specifically, Plaintiff seeks $90,000 in attorneys' fees, $7,223.16 in litigation costs, and a $2,500 Class Representative incentive award for Plaintiff Charish Espinosa. *Id.*

**1.** <u>*Attorneys' Fees*</u>

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

17cv744-MMA (BLM)

Plaintiff requests the Court award $90,000, or 30% of the fund, in attorneys' fees. Doc. No. 24 at 2. In evaluating this request, the Court first considers whether the proposed common fund fee request is appropriate under California law. The Court then considers whether, under the relevant Ninth Circuit factors, the requested fee award is fair and reasonable. As a final check on the overall reasonableness of the fee request, the Court will conduct a lodestar cross-check.

### a.  California Law

The Ninth Circuit has held that in cases where state law claims predominate, state law governs the method of calculating fee awards. *See Mangold v. Cal. Pub. Utils, Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (stating that the Ninth Circuit has "applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The California Supreme Court has held that in common fund cases, a trial court may award class counsel a fee out of that fund by choosing an appropriate percentage of the fund. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503-06 (2016). "[T]rial courts have discretion to conduct a lodestar cross-check on a percentage fee" or they may "use other means to evaluate the reasonableness of a requested percentage fee." *Id.* at 506. Regardless of the method chosen, California law requires that the overall fee be reasonable. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557-58 (Ct. App. 2009); *see also In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (citing *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271-72 (9th Cir. 1989)).

Plaintiff's Counsel seeks 30% of the Gross Settlement Amount, which would result in a fee award of $90,000. Doc. No. 24 at 9. "California courts routinely award attorneys' fees of one-third of the common fund." *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) (approving a fee award of one-third of the $15,150,000 settlement fund in a class action settlement); *see Laffitte*, 1 Cal. 5th at 506 (approving a fee award of one-third of the gross settlement amount in a wage and hour class action settlement); *Chavez v. Netflix, Inc.*, 162 Cal. App.

4th 43, 66 n.11 (Ct. App. 2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").  "Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent."  *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG WMC, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013).

Moreover, the results achieved after extensive work by the parties and in light of the risks Plaintiff would face if the case progressed, such as the risk of an adverse ruling on class certification or summary judgment or the possibility of an unfavorable or less favorable result at trial or on appeal, justify the award of attorneys' fees.  In *Laffitte*, the California Supreme Court affirmed a one-third attorneys' fee award in a wage and hour class action that involved extensive discovery, motions for summary judgment, a class certification motion, a motion for reconsideration, and two full-day mediations.  *Laffitte*, 1 Cal. 5th at 506.  There, the trial court considered "the risk, expense, complexity and likely duration of further litigation; the risk of maintaining a class action status throughout trial; the extent of discovery completed; the experience and views of counsel; and the views of the class members."  *Laffitte v. Robert Half Int'l Inc.*, 231 Cal. App. 4th 860, 870 (Ct. App. 2014), *aff'd*, *Laffitte*, 1 Cal. 5th 480.  Here, as described above, the parties actively engaged in discovery, performed extensive investigation into the merits of the case, and participated in multiple settlement discussions—including an Early Neutral Evaluation with the Court and a full-day mediation.  Doc. No. 25 at 9-10.  Further, Plaintiff recognizes that proceeding with litigation is risky.  *Id.* at 17.  For example, Plaintiff states that if the putative class is not certified, "the value of Plaintiff's case would have been reduced to a fraction of the value of this Settlement; indeed, Defendant would have likely offered no money to settle the class-wide claims if certification had been denied."  *Id.*  Achieving a $300,000 settlement that will provide immediate cash benefit to all Participating Class Members in the face of these risks

merits the requested one-third fee. Thus, under the circumstances of this case and pursuant to California law, the requested fees are appropriate.

### b. <u>Ninth Circuit Law</u>

Under Ninth Circuit precedent, a court has discretion to calculate and award attorneys' fees using either the lodestar method or the percentage-of-the-fund method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002). Despite the discretion afforded to the court, the Ninth Circuit recommends that district courts cross-check the award by applying a second method. *In re Bluetooth*, 654 F.3d at 944-45.

### 1. Percentage-of-the-Fund

The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage-of-the-fund method. *Vizcaino*, 290 F.3d at 1047. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

As discussed previously, Plaintiff's Counsel requests 30% of the fund. With respect to the percentage method, case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small. *See* Rubenstein, Conte and Newberg, *Newberg on Class Actions* at § 15:83. California cases in which the common fund is small tend to award attorneys' fees above the 25% benchmark. *See Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (holding attorneys fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark). Accordingly, Plaintiff's requested award of 30% of the common fund is a slight upward departure from the Ninth Circuit's 25% benchmark. However, as explained below, Plaintiff's request is reasonable.

//

## 2. Reasonableness

Regardless of whether the Court uses the percentage approach or the lodestar method, the ultimate inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the burdens carried by class counsel; and (5) the awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50.

First, the Court considers the results achieved for the Class Members. *See In re Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."). Here, the Gross Settlement Amount is $300,000 and the total average recovery is approximately $619.54, with the highest recovery amounting to approximately $1,246.62. Kline Supp. Decl., ¶ 3, 5-8. Further, no objections to the settlement have been made, no Class Members requested to be excluded, and 219 Class members submitted a valid Claim Form, which amounts to a 54.21% response rate. *Id.* Additionally, Plaintiff asserts the settlement vindicates the rights of workers and enforces compliance with important workplace regulations and serves the public interest. Doc. No. 24 at 18-19. This favors reasonableness.

Second, the Court considers the risks of the litigation. *Vizcaino*, 290 F.3d at 1048-49. Based on Plaintiff's representations, if the case had proceeded through litigation, there was a substantial risk that the Class may not be certified or recover at all. Doc. No. 25 at 15-17. As noted herein, Plaintiff highlights legal uncertainties with respect to class certification and Defendant's vigorous disputes to liability and class certification. *Id.* at 15-16. Moreover, Plaintiff states that "[l]arge-scale litigation of this type is, by its very nature, complicated and time-consuming," and that "[a]ny law firm undertaking representation of a large number of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and

resources." Doc. No. 24 at 19. Accordingly, the second factor favors the reasonableness of the requested fees.

The third and fourth factors ask the Court to consider the skill required and the quality of work, and the burdens carried by class counsel. *See Vizcaino*, 290 F.3d at 1049-50. Plaintiff asserts the skills required and quality of work support the requested attorneys' fees. Doc. No. 24 at 19-21. Specifically, Plaintiff contends that Plaintiff's Counsel has "considerable experience in wage and hour class actions . . . , regularly litigates wage and hour claims throughout certification and on the merits, and ha[s] considerable experience settling wage and hour class actions." Doc. No. 24 at 21; *see also* Doc. No. 24-1, Declaration of Matthew Bainer in Support of Motion for Attorneys' Fees, Costs, and Class Representative Service Award ("Fees Bainer Decl."), ¶¶ 6-7. Further, it appears that Plaintiff's Counsel was competent in investigating, negotiating, and achieving this Settlement. Doc. No. 24 at 19-21. According to Plaintiff's Counsel's briefing, the lodestar amount for the work performed is $131,625. *Id.* at 23; Fees Bainer Decl., ¶ 8. This indicates that Plaintiff's counsel carried a significant burden, requiring both skill and quality of work. As such, these factors weigh in favor of finding the requested fees are reasonable.

Finally, the Court considers awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50. The 30% award requested in this case is commensurate with percentage-of-the-fund awards made in other wage and hour class actions. *See Adoma*, 913 F. Supp. 2d at 982-85 (reducing attorneys' fees award from 33.3% to 29%); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at *9-14 (N.D. Cal. Dec. 11, 2015) (approving attorneys' fees of one-third of the settlement fund in a wage and hour class action); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (awarding 33% of the settlement fund); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (awarding 33 percent of the common fund and collecting cases regarding the same); *Franco v. Ruiz Food Products, Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *18 (E.D. Cal. Nov. 27, 2012) (awarding the

requested 33 percent of the class recovery); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-0324-AWI SKO, 2012 WL 5364575, at *7-10 (E.D. Cal. Oct. 31, 2012) (awarding 33 percent of the common fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (awarding 33.33 percent of the common fund); *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015) (awarding 30 percent of the common fund); *Ching v. Siemens Indus., Inc.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *7-8 (N.D. Cal. June 27, 2014) (awarding 30 percent of the common fund). Accordingly, Plaintiff's request for an award of 30% of the common fund is in line with attorneys' fees approved in other wage and hour class actions in the Ninth Circuit. Accordingly, the reasonableness factors support the slight upward departure from the Ninth Circuit's 25% benchmark.

### c. <u>Lodestar Cross-Check</u>

District courts often conduct a Lodestar cross-check to ensure that the percentage based fee is reasonable. *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016); *Crawford v. Astrue*, 586 F.3d 1142, 1151 (9th Cir. 2009). The lodestar method multiplies the number of hours reasonably expended by a reasonable hourly rate. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Further, "[t]he lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation" because it only "serves as a point of comparison by which to assess the reasonableness of a percentage award." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008). Accordingly, "the lodestar can be approximate and still serve its purpose." *Id.*

To date, Plaintiff's Counsel expended 202.50 hours on this matter and Counsel's hourly rate is $650. Fees Bainer Decl., ¶ 8; *see also* Fees Bainer Decl., Exhibit A. Thus, Plaintiff contends that the lodestar amount for work performed in this action is $131,625. Doc. No. 24 at 23; *see also* Fees Bainer Decl, ¶ 8. Here, Counsel's requested award is $41,625 less than the calculated lodestar amount – or 68.37% of the lodestar amount. Thus, Counsel's requested award, even without a multiplier, is significantly less than

what he may be entitled to under the lodestar method. Accordingly, this favors approval of the requested attorneys' fees.

### d. Conclusion

Because Plaintiff's Counsel seeks 30% of the settlement fund, and because that amount is reasonable based on the factors outlined above and after conducting a lodestar cross-check, the Court **APPROVES** the requested amount of attorneys' fees in the amount of $90,000.

## 2. *Litigation Expenses*

Plaintiff's Counsel seeks reimbursement of their costs in the amount of $7,223.16. Doc. No. 27 at 4. Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Class counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *Staton*, 327 F.3d at 974.

Here, Plaintiff's Counsel's expenses include costs for filing Plaintiff's Complaint, courier charges for serving Defendant with the Service of Process documents and providing courtesy copies of Plaintiff's preliminary and final approval motions to the Court, airfare and hotel costs incurred while attending mediation, mediator fees, and airfare to attend the hearing originally set for March 5, 2018. Doc. No. 27 at 3-4. Plaintiff's Counsel has provided itemized receipts for each of these costs and limits his request for costs to "the itemized items for which receipts have . . . been provided." *Id.* at 4. The Court has reviewed those receipts and notes that Plaintiff's calculations are slightly off, the costs total $6,990.52, not $7,223.16.[5] In addition, Plaintiff's Counsel

---

[5] Plaintiff's Counsel provides receipts for the following: (1) $1,482.26 for filing Plaintiff's Complaint; (2) $68.95 in courier charges for serving Defendant; (3) $347.95 for airfare to the parties' mediation; (4)

17cv744-MMA (BLM)

included a receipt for $525.96 in charges incurred for Plaintiff's Counsel's flight to the March 5, 2018 hearing, which was vacated and reset for April 9, 2018. *Id.* at 3-4; *see* Doc. No. 32. Although the Court permitted Plaintiff's Counsel to file a supplemental declaration with respect to litigation costs, no such declaration was filed. *See* Doc. No. 32; *see also* Docket. The Court declines to reimburse Plaintiff's Counsel for costs incurred relating to the March 5, 2018, especially in light of the fact that the Court permitted Plaintiff's Counsel an opportunity to update his costs. As a result, the Court reduces Plaintiff's Counsel's costs by the cost of his March 5, 2018 flight, or $525.96.

The Court finds that Plaintiff's Counsel's out-of-pocket costs of $6,464.56 were reasonably incurred in connection with the prosecution of this litigation, were advanced by Plaintiff's Counsel for the benefit of the Class, and should be reimbursed in the actual amount of costs incurred. As such, the Court **APPROVES** Plaintiff's Counsel's litigation costs in the amount of $6,464.56, which is the total of "the itemized items for which receipts have . . . been provided," less the cost of the March 5, 2018 flight. *See* Doc. No. 27.

### 3. *Class Representative Incentive Award*

Plaintiff also moves the Court for an incentive award of $2,500 for named Plaintiff Charish Espinosa. Doc. No. 24 at 24. "Incentive awards are appropriate only to compensate named plaintiffs for work done in the interest of the class as well as to compensate named plaintiffs for their reasonable fear of workplace retaliation." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (citing *Staton*, 327 F.3d at 977). Courts should ensure that an incentive award is not based on fraud or collusion. *Id.* In assessing the reasonableness of an incentive award, several district

---

$312.45 for Plaintiff's Counsel's hotel stay during the mediation; (5) $4,195 for mediator fees; (6) $27.95 for courier fees for delivery of a courtesy copy of Plaintiff's Motion for Preliminary Approval of Class Action Settlement; (7) $30 for courier fees for delivery of a courtesy copy of Plaintiff's Motion for Final Approval of Class Action Settlement; and (8) $525.96 for airfare to the hearing on the instant motion, which totals $6,990.52. Doc. No. 27 at 3-4.

courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995), which analyzes: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation.

No class members have objected to Plaintiff's request for an incentive award of $2,500. *See* Kline Decl., ¶14. The $2,500 incentive award is also well within the acceptable range awarded in similar cases. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454, 462-63 (E.D. Cal. 2013) (awarding class representative $2,500 where action settled for $400,000 and each class member received $65.79); *Wolph v. Acer America Corporation*, No. C 09-1314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (awarding class representative $2,000); *Rigo v. Kason Industries, Inc.*, No. 11-cv-64-MMA (DHB), 2013 WL 3761400, at *8 (S.D. Cal. July 16, 2013) (finding $2,500 incentive award well within the acceptable range); *Vinh Nguyen v. Radient Pharmaceuticals Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *11-12 (C.D. Cal. May 6, 2014) (approving $2,000 award for class representative); *Valdez v. Neil Jones Food Co.*, No. 1:13-cv-00519-SAB, 2016 WL 4247911, at *13-14 (E.D. Cal. Aug. 10, 2016) (approving $3,000 incentive award). Also, Plaintiff "expended relatively considerable time and effort assisting her attorneys with the prosecution of the class claims given the early procedural posture of the action, and her unique contributions." Doc. No. 25 at 26. Moreover, Plaintiff asserts the award is justified in light of the reputational risk Plaintiff assumed by litigating these claims. *Id.* at 25-26. Further, if the Court does not approve the incentive award, Plaintiff will recover no more than other Class Members, "despite undergoing personal sacrifices in bringing this suit . . . ." *Id.* at 26. Based on the work done in the interest of the class, the Court **APPROVES** the incentive award as reasonable.

## CONCLUSION

The Court **GRANTS** Plaintiff's Motion for Class Action Settlement [Doc. No. 25] and **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees, Costs and Expenses, and Class Representative Incentive Awards [Doc. No. 24]. The Court finds the proposed settlement of this class action appropriate for final approval pursuant to Federal Rule of Civil Procedure 23(e). The Court finds that the proposed settlement appears to be the product of serious, informed, arms-length negotiations, and that the settlement was entered into in good faith, and that Plaintiff has satisfied the standards for final approval of a class action settlement under federal law. Further, the Court finds the settlement administration costs in the amount of $7,783 is reasonable. The Court also finds Plaintiff's request for an award of attorneys' fees in the amount of 30% of the common fund, or $90,000, and costs in the amount of $6,464.56 are reasonable. Finally, the Court finds the class representative incentive award of $2,500 to Plaintiff Charish Espinosa is reasonable.

## JUDGMENT AND ORDER OF DISMISSAL

The Court **APPROVES** the Settlement and **ORDERS** the Parties to implement the Settlement Agreement according to its terms and conditions and this Court's Final Order.[6]

1.    For the reasons set forth in the Preliminary Approval Order, this Court finds that the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process have been satisfied.

2.    The Court finds that it has jurisdiction over the subject matter of the action and over all parties to the action, including all members of the Settlement Class.

3.    The Class Notice fully and accurately informed Class Members of all material elements of the proposed settlement and of their opportunity to opt out or object;

---

[6] This Order and Judgment hereby adopts and incorporates by reference the terms and conditions of the Settlement Agreement, together with the definitions used therein.

was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Class Members; and complied fully with the laws of the United States of America. The Class Notice fairly and adequately described the settlement and provided Class Members with adequate instructions and a variety of means to obtain additional information.

4.      Class Members were given a full opportunity to participate in the Final Approval hearing, and all Class Members and other persons wishing to be heard have been heard. Accordingly, the Court determines that all Class Members who did not timely and properly opt-out of the settlement are bound by this Order and Judgment.

5.      The Court has considered all relevant factors for determining the fairness of the settlement and has concluded that all such factors weigh in favor of granting final approval. In particular, the Court finds that the settlement was reached following meaningful discovery and investigation conducted by Plaintiff's Counsel; that the settlement is the result of serious, informed, adversarial, and arm's-length negotiations between the Parties; and that the terms of the settlement are in all respects fair, adequate, and reasonable.

In so finding, the Court has considered all evidence presented, including evidence regarding the strength of Plaintiff's case; the risk, expense, and complexity of the claims presented; the likely duration of further litigation; the amount offered in settlement; the extent of investigation and discovery completed; and the experience and views of counsel. The Parties have provided the Court with sufficient information about the nature and magnitude of the claims being settled, as well as the impediments to recovery, to make an independent assessment of the reasonableness of the terms to which the Parties have agreed.

Accordingly, the Court hereby approves the settlement as set forth in the Settlement Agreement and expressly finds that the settlement is, in all respects, fair, reasonable, adequate, and in the best interests of the entire Settlement Class and hereby directs implementation of all remaining terms, conditions, and provisions of the

Settlement Agreement.  The Court also finds that settlement now will avoid additional and potentially substantial litigation costs, as well as delay and risks if the Parties were to continue to litigate the case.  Additionally, after considering the monetary recovery provided by the settlement in light of the challenges posed by continued litigation, the Court concludes that the settlement provides Class Members with fair and adequate relief.

6.      The Settlement Agreement is not an admission by Defendant or by any other released party, nor is this Order a finding of the validity of any allegations or of any wrongdoing by Defendant or any other released party.  Neither this Order, the Settlement Agreement, nor any document referred to herein, nor any action taken to carry out the Settlement Agreement, may be construed as, or may be used as, an admission of any fault, wrongdoing, omission, concession, or liability whatsoever by or against Defendant or any of the other released parties.

7.      Final approval shall be with respect to: All persons who, from February 21, 2013, up to and including December 14, 2017, worked for Defendant in the state of California as a non-exempt, hourly-paid employees.

8.      The named Plaintiff Charish Espinosa is a suitable representative and is hereby appointed the representative for the Settlement Class.  The Court finds that Plaintiff's investment and commitment to the litigation and its outcome ensured adequate and zealous advocacy for the Settlement Class, and that her interests are aligned with those of the Settlement Class.

9.      The Court appoints The Bainer Law Firm as Class Counsel.  The Court finds that counsel have demonstrable experience litigating, certifying, and settling class actions, and will serve as adequate counsel for the Settlement Class.

10.     The Court approves the requested settlement administration costs to Simpluris, Inc.

11.     Defendant must pay Class Members pursuant to the procedure described in the Settlement Agreement.  Defendant will have no further liability for costs, expenses,

interest, attorneys' fees, or for any other charge, expense, or liability, except as provided in the Settlement Agreement.

12.     All Class Members were given a full and fair opportunity to participate in the Approval Hearing, and all members of the Settlement Class wishing to be heard have been heard.  Members of the Settlement Class also have had a full and fair opportunity to exclude themselves from the proposed settlement and the class.  Accordingly, the terms of the Settlement Agreement and the Court's Order and Judgment shall be forever binding on all Class Members who did not timely and properly opt-out of the settlement.  These Class Members have released and forever discharged the Defendant for any and all Released Claims.

13.     Without affecting the finality of this Order and Judgment, the Court shall retain exclusive and continuing jurisdiction over the above-captioned action and the parties, including all Class Members, for purposes of enforcing the terms of the Judgment entered herein.

Accordingly, this action is **DISMISSED WITH PREJUDICE**.  The Clerk of Court is instructed to enter final judgment in accordance with this Order.

**IT IS SO ORDERED.**

Dated:  April 9, 2018

Hon. Michael M. Anello
United States District Judge

17cv744-MMA (BLM)